**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
PATRICK BRYANT,

                    Plaintiff,           **DECISION AND ORDER**
                                               13-cv-5234 (ADS)(GRB)

              -against-

KRISTEN STEELE, personally, THOMAS
VERTREES, M.D., personally, DAVID
MARGUILIES, M.D., personally, BRENDA
GARRO, M.D., personally, THEDDEUS
IHENACHO, M.D., personally, ABID IQBAL
KHAN, M.D., personally, LLOYD SOOKU,
M.D., personally, and BRUNSWICK
HOSPITAL CENTER, INC.,

                    Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**Law Office of Ray Malone, PLLC**
*Attorneys for the Plaintiff*
207 Radio Ave
Miller Place, NY 11764
      By: Robert J. Malone, Esq., Of Counsel

**Touro College Jacob D. Fuchsberg Law Center, Civil Rights Clinic**
*Attorneys for the Plaintiff*
225 Eastview Drive
Central Islip, NY 11722
      By: William M. Brooks, Esq., Of Counsel

**New York State Attorney General's Office**
*Attorneys for the Defendants Kristen Steele, personally; Thomas Vertrees, M.D., personally,
David Margulies, M.D., personally; and Brenda Garro, M.D., personally*
Mineola, NY 11501
      By: Ralph Pernick, Assistant Attorney General

**Ivone, Devine & Jensen**
*Attorneys for the Defendant Theddeus Ihennacho, M.D., personally and Abid Iqbal Khan, M.D., personally*
2001 Marcus Avenue
Lake Success, NY 11042
      By:    Brian E. Lee, Esq., Of Counsel

**Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.**
*Attorneys for the Defendant Lloyd Sooku, M.D., personally*
530 Saw Mill River Road
Elmsford, NY 10523
      By: James M. Skelly, Esq.
         Robert E. Fein, Esq., Of Counsel

**Lewis, Johs, Avallone, Aviles**
*Attorneys for the Defendant Brunswick Hospital Center, Inc.*
425 Broad Hollow Road
Melville, NY 11747
      By:  Greg M. Mondelli, Esq., Of Counsel


**SPATT, District Judge.**

This civil rights and medical malpractice action arises out of the involuntary hospitalization of the Plaintiff ("Patrick Bryant") by the former Defendant Stony Brook University Medical Center ("Stony Brook") and the Defendant Brunswick Hospital Center, Inc. ("Brunswick") in March 2011.

The third amended complaint, formally interposed on December 24, 2014, raises the following claims: (1) a 42 U.S.C. § 1983 claim against the Defendants Kristen Steele, Dr. Thomas Vertrees, Dr. David Margulies, Dr. Brenda Garro, Dr. Theddeus Ihenacho, and Dr. Abid Iqbal Khan, alleging a violation of the right against unreasonable seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; (2) 42 U.S.C. § 1983 substantive due process claims under the Fourteenth Amendment against the Defendants Dr. Ihenacho and Dr. Khan; (3) medical malpractice claims against the Defendants Dr. Garro, Dr. Ihenacho, Dr. Khan, and Brunswick; and (4) a claim against the Defendants Dr. Lloyd Sookhu

and Brunswick for any Medicaid or Medicare charges collected as a result of treatment to the Plaintiff that he must pay to satisfy any Medicaid or Medicare liens.

Prior to the filing of the third amended complaint, on November 18, 2014, the Defendants Drs. Ihenacho and Khan moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6) to dismiss the federal claims against them for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted. Alternatively, Ihenacho and Khan request that the Court convert their motion to a Fed. R. Civ. P. 56 motion for summary judgment. Drs. Ihenacho and Khan also request that, in the event this Court dismisses the federal causes of action against them, the Court should decline to exercise supplemental jurisdiction over the pendent state law claims against them.

The Court treats the instant motion as directed at the later-filed third amended complaint. For the reasons set forth, the motion is denied.

## I.  BACKGROUND

Unless otherwise stated, the following facts are drawn from the third amended complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

A.  The Parties

The Plaintiff is a resident of Suffolk County in New York State.

The Defendant Kristen Steele was at all relevant times a member of the Mobile Crisis Unit operated by the New York State Office of Mental Health in Suffolk County (the "OMH").

The Defendant Dr. Vertrees was at all relevant times a designee of the Director of Community Services in Suffolk County.

The Defendant Dr. Marguiles was at all relevant times a designee of the Director of Community Services in Suffolk County.

The Defendant Dr. Garro was at all relevant times a psychiatrist employed by Stony Brook Medical Center. Stony Brook is operated by the State of New York, and, in turn, operates a Comprehensive Psychiatric Emergency Program (the "CPEP").

The Defendant Dr. Ihenacho was at all relevant times a psychiatrist employed by the Defendant Brunswick Hospital Center, Inc. which is licensed by the OMH to provide psychiatric services.

The Defendant Dr. Khan was at all relevant times a psychiatrist employed by Brunswick.

Finally, the Defendant Dr. Sookhu was at all relevant times a non-psychiatric physician employed by Brunswick.

B. Factual Allegations

In late 2010 and into the early part of 2011, the Plaintiff allegedly received several telephone calls from unidentified persons that he perceived to be threatening. On February 7, 2011, the Plaintiff sought assistance from the Suffolk County Police Department to investigate these calls.

Between March 14, 2011 and March 21, 2011, the Plaintiff twice contacted the Internal Affairs Division of the Suffolk County Police Department to complain about the lack of progress of police work in connection with the allegedly threatening telephone calls. However, the Suffolk County Police perceived the Plaintiff's reports to them and his behavior as manifestations of mental illness.

At some point, the police contacted the Mobile Crisis Unit operated by the OMH to evaluate the Plaintiff. Part of the function of the Mobile Crisis Unit is to promptly assess the need for emergency mental health evaluations for individuals deemed to be in crisis.

On March 21, 2011, Steele, a social worker who was part of the Mobile Crisis Unit, accompanied by two Suffolk County Police officers, approached the Plaintiff's home. The Plaintiff met them outside his home and the police engaged the Plaintiff in discussion.

During the conversation with the police, the Plaintiff mentioned that he had old hunting rifles in his home. The rifles were collector's items: a Marlin; a World War II British rifle; a World War I Eddystone; and a 1930's Spanish Mauser. The rifles were kept in a glass display in the Plaintiff's bedroom, were not loaded, and some had never been used by the Plaintiff. The Plaintiff kept the rifles in a display cabinet as collector's items because he no longer hunted deer as a hobby that he once enjoyed with his friends during the 1980s. According to the Plaintiff, he had not used or intended to use the rifles since 1989 when he was issued his last hunting permit.

When the police asked the Plaintiff for more information about the rifles, he explained that he had four hunting rifles which he had not used in twenty-three years and had no intentions of using them. The Plaintiff further stated to the police that the rifles were dusty and therefore inoperable in their current condition. Shortly thereafter, the conversation ended, the police and social workers permitted the Plaintiff to return to his home.

The Plaintiff alleges that, notwithstanding his logical and coherent responses to the questions, Steele determined that the Plaintiff manifested symptoms of mental illness that required psychiatric evaluation.

Steele was never directly responsible for the Plaintiff's treatment prior to or subsequent to March 21, 2011. Steele communicated with the Directors of Community Services Designees, Drs. Vertrees and Margulies in connection with the removal of the Plaintiff from his home pursuant to the provisions of New York Mental Hygiene Law § 9.45. Steele reported to Drs.

Vertrees and Margulies that the Plaintiff suffered from a mental illness for which immediate care and treatment in a hospital was appropriate.

The Plaintiff alleges that he never suffered from a mental illness for which immediate care and treatment in a hospital was appropriate and which was likely to result in serious harm to himself or others as defined by Mental Hygiene Law § 9.45. The Plaintiff further alleges that Steele had no basis to believe that the Plaintiff suffered from a mental illness for which immediate care and treatment was appropriate and which was likely to result in serious harm to himself or others as defined by Mental Hygiene Law § 9.45.

Nonetheless, on March 21, 2011, Drs. Vertrees and Margulies authorized the involuntary transport of the Plaintiff to the CPEP operated by Stony Brook pursuant to Mental Hygiene Law § 9.45. The police then seized the Plaintiff at his home and transferred him to the CPEP department at Stony Brook for psychiatric evaluation. The Plaintiff did not resist and left peacefully with the officers. However, the Plaintiff did not consent to any psychiatric services. The officers also seized the Plaintiff's collector's rifles from the display cabinet in his home.

At Stony Brook, the Plaintiff was examined by Dr. Garro for "approximately three minutes." Dr. Garro apparently asked the Plaintiff why the police brought him to the CPEP. The Plaintiff then described his attempts to seek police assistance in connection with the allegedly threatening phone calls and that earlier in the day, he "casually" mentioned the collector's rifles in the display cabinet to the police officers. Dr. Garro did not ask any further questions regarding the rifles, including why the Plaintiff had them, their condition; or whether they were loaded or in a locked area.

Further, Dr. Garro did not inquire whether the Plaintiff intended to use the guns for any purpose, including self-protection; whether he intended to harm anyone or himself; or whether he

had any violent thoughts. In this regard, the Plaintiff claims that he never had any thoughts or plans to use the rifles.

Following this meeting, Dr. Garro concluded that the Plaintiff was manifesting symptoms of a mental illness and required an evaluation for immediate treatment in a hospital setting. Dr. Garro subsequently applied to involuntarily hospitalize the Plaintiff pursuant to Mental Hygiene Law § 9.37.

The Plaintiff maintains that in conducting a psychiatric evaluation that lasted no more than approximately three minutes, Dr. Garro could not have gathered the necessary information to satisfy professional standards to determine whether the Plaintiff posed a sufficient likelihood of causing harm to himself or others.

At some point, other staff members at Stony Brook contacted the Plaintiff's mother to gather information regarding the Plaintiff's history. The Plaintiff's mother confirmed that he had never attempted suicide or had a past psychiatric history.

As a result of his confinement, Stony Brook billed the Plaintiff for services rendered that he did not authorize or agree to pay for.

On March 22, 2011, Stony Brook transferred the Plaintiff to Brunswick, a private hospital, based upon Dr. Garro's application for involuntary admission pursuant to mental Hygiene Law § 9.37. Again, the Plaintiff did not consent to the transfer and subsequent confinement, nor did he agree to accept and pay for any services delivered by Brunswick.

Dr. Ihenacho confirmed admission of the Plaintiff pursuant to Mental Hygiene Law § 9.37 without conducting a psychiatric evaluation of the Plaintiff. Rather, the Plaintiff asserts, Dr. Inhennacho simply relied on Dr. Garro's prior assessment of the Plaintiff.

Shortly after the Plaintiff's admission to Brunswick hospital, Dr. Sookhu conducted an examination of the Plaintiff for approximately ten minutes. Dr. Sookhu is not a psychiatrist.

Within seventy-two hours of the Plaintiff's admission to Brunswick, Dr. Khan certified that the Plaintiff was in need of involuntary care and treatment pursuant to Mental Hygiene Law § 9.37 without conducting a psychiatric evaluation. The Plaintiff maintains that at no time during his confinement at Brunswick did a psychiatrist provide treatment to the Plaintiff. He remained involuntarily confined at Brunswick from March 22, 2011 until March 31, 2011, when he was released. As a result of this hospitalization, Brunswick and Dr. Sookhu billed the Plaintiff for services rendered that he did not authorize or agree to pay for.

## II.    DISCUSSION

A.  The Rule 12(B)(1) Subject Matter Jurisdiction Standard

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008)(quoting Sinochem Int'l Co. v. Malay Int'l Shipping Corp., 549 U.S. 422, 425, 127 S. Ct. 1184 (2007)), rev'd en banc on other grounds, 585 F.3d 559 (2d Cir. 2009). "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Id. (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

"When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." Id. (internal quotation marks and citations omitted). "[T]he court must take all facts alleged in the complaint as true

and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)(internal citation omitted), aff'd on other grounds, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).

B.  The Rule 12(b)(6) Motion to Dismiss Standard

When deciding a motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6), the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)(citation omitted).  However, a complaint must do more than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. (citation omitted).

On a rule 12(b)(6) motion, "courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." Moses v. Apple Hospitality Reit Inc., No. 14-CV-3131 (DLI)(SMG), 2015 WL 1014327, at *3 (E.D.N.Y. Mar. 9, 2015)(citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)).

C.  The Federal Claims Against Ihenacho and Khan

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that defendants violated his or her federal rights while acting under color of state law. See Washington v. County of

Rockland, 373 F.3d 310, 315 (2d Cir. 2004). A private entity, such as Brunswick where Drs. Ihenacho and Khan were employed, acts under color of state law for purposes of § 1983 when "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." Hogan v. A.O. Fox Memorial Hosp., 346 Fed. Appx. 627, 629 (2d Cir. 2009)(citing Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)(quoting Rendell–Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982)).

Here, Drs. Ihenacho and Khan contend that the forcible hospitalization of the Plaintiff by private health care providers such as themselves cannot fairly be attributed to the state. This argument is more appropriately a question considered under Rule 12(b)(6), not a jurisdictional issue. Rene v. Citibank NA, 32 F. Supp. 2d 539, 543 (E.D.N.Y. 1999)("to the extent the defendants contend that they are not amenable to a Section 1983 suit because they did not act under color of state law, such arguments are more appropriately raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim"); see generally Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361–66 (2d Cir. 2000)("Court decisions often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or failure to state a claim.").

Although the Court may also dismiss for lack of subject matter jurisdiction if the claims that provide federal jurisdiction are "immaterial and made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous," Pisani v. Diener, No. 07-CV-5118 (JFB)(ARL), 2009 WL 749893, at *3 n. 1 (E.D.N.Y. Mar. 17, 2009), the Court is unable to reach that conclusion here. In fact, as described later, the Plaintiff has properly plead his federal causes of action against Drs. Ihenacho and Khan.

Circling back to the question of forced hospitalization by private health care provides, the Court first takes note of Doe v. Rosenberg, 166 F.3d 507 (2d Cir. 1999), a case in which the Plaintiff was represented by co-counsel here, William M. Brooks of the Mental Disability Law Clinic of the Jacob D. Fuchsberg Law Center, Touro College. The Second Circuit addressed a substantially identical question to that raised here. Substantially adopting the "comprehensive and scholarly" opinion issued by District Judge Robert W. Sweet, the Second Circuit held that private health care professionals and a private hospital did not engage in state action when they involuntarily committed Doe to a psychiatric ward of Columbia Presbyterian Medical Center. Id. at 508. The district court had analyzed each of the three tests for state action and found that none were satisfied. Doe v. Rosenberg, 996 F. Supp. 343, 351–55 (S.D.N.Y. 1998).

In Hogan, the Second Circuit, relying on Rosenberg, affirmed a district court's grant of summary judgment to a private hospital and physician that involuntarily committed a patient, finding that the conduct could not be attributed to the state. 346 F. App'x at 629.

In McGugan v. Aldana-Bernier, 752 F.3d 224, 230 (2d Cir. 2014), another case in which the Plaintiff was represented by Attorney Brooks of the Mental Disability Law Clinic of the Jacob D. Fuchsberg Law Center, the Second Circuit declined to overrule Rosenberg. There, the Second Circuit concluded as follows:

Because we see no basis for distinguishing or overruling <u>Rosenberg</u>, we are compelled to agree with the district court that McGugan has not alleged state action. Here, as in <u>Rosenberg</u>, the state endowed Defendants with the authority to involuntarily hospitalize (and medicate) the plaintiff, but it did not compel them to do so. Here, as in <u>Rosenberg</u>, although Defendants operated in a highly regulated context, the nexus between their challenged conduct and the state was insufficiently close for the conduct to qualify as state action. And finally, if the conduct in <u>Rosenberg</u> was not traditionally within the exclusive prerogative of the state, we see no reason why the conduct here would be.

McGugan urges us not to follow <u>Rosenberg</u> for four reasons, none of which has merit. First, she argues that this case is unlike <u>Rosenberg</u> because her involuntary hospitalization occurred after state actors transported her to JHMC. We do not see how these allegations, without more, could affect the state action analysis here. McGugan does not allege that the state actors requested, much less compelled JHMC or its staff to involuntarily hospitalize her. Nor can we discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors.

Second, McGugan argues that, unlike in <u>Rosenberg</u>, she was hospitalized pursuant to a "complex scheme for evaluating, detaining and treating people with mental illness." McGugan has not, however, alleged a meaningfully different scheme than the one at issue in <u>Rosenberg</u>. In <u>Rosenberg</u>, the plaintiff was involuntarily hospitalized pursuant to a scheme where hospitals, subject to extensive regulation by the state, were permitted to detain patients certified to require involuntary treatment. <u>See</u> <u>Rosenberg</u>, 996 F. Supp. at 347. Here, McGugan was involuntarily hospitalized pursuant to a substantially similar scheme. The only material differences that McGugan alleges are that OMH has divided New York into catchment areas, which determine which patients are transported to which hospitals, and that private hospitals transfer patients in need of long-term involuntary care to state hospitals. Neither of these allegations meaningfully affects the state action analysis here. Nor does either suggest that the state had so close a nexus to the private conduct that "it [could] be said that the State is responsible for the specific conduct of which the plaintiff complains." <u>See</u> <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)(emphasis omitted).

Third, McGugan argues that <u>Rosenberg</u> is no longer binding precedent because of three intervening decisions. The first decision, <u>Fabrikant v. French</u>, 691 F.3d 193 (2d Cir. 2012), held that spaying and neutering pets without the owner's consent constituted state action because animal control is a state function and because the actions were taken in conjunction with the defendants' law enforcement and investigative activities. <u>Id.</u> at 208. The second decision, <u>Kia P. v. McIntyre</u>, 235 F.3d 749 (2d Cir. 2000), held that a private hospital did not engage in state action when it refused to release an infant who tested positive for methadone in order to provide medical care, but that once the infant obtained medical clearance and the

hospital continued to hold her in its role as part of the reporting and enforcement machinery for the state Child Welfare Administration, the hospital did engage in state action. Id. at 756–57. The third is a decision of another circuit, not binding in our circuit, which furthermore related to the laws of a state other than New York. See Jensen v. Lane County, 222 F.3d 570, 574–76 (9th Cir. 2000). None of these cases casts doubt on the validity of our holding in Rosenberg. None is inconsistent with Rosenberg.

Finally, McGugan argues that the reasoning of Rosenberg was flawed. We are not confident that McGugan has identified any fatal flaws in its reasoning. But even if we thought so, Rosenberg is precedent of our Circuit, which is binding on us. Arguments that Rosenberg was wrongly decided should either be made in a petition to our Circuit for en banc review, or to the Supreme Court. See United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004). The arguments that the power to involuntarily hospitalize a patient should be considered as traditionally falling within the exclusive prerogative of the state are by no means frivolous. But, in light of Rosenberg, a panel of this Court is not at liberty to adopt them.

752 F.3d at 229-231.

In McGugan, the Plaintiff, represented by Attorney Brooks, heeded the Second Circuit's advice to petition for *en banc* review. However, by order dated June 27, 2014, the Second Circuit denied the Plaintiff's petition for a panel rehearing, or, in the alternative, for a rehearing *en banc*. (Doc No. 128, Exh A.) The panel that determined the appeal considered the request for panel rehearing, and the active members of the Second Circuit considered the request for rehearing *en banc*.

Rosenberg involved an involuntary commitment pursuant to New York Mental Hygiene Law § 9.27 and McGugan involved an involuntary commitment pursuant to New York Mental Hygiene Law § 9.39. This case involves an involuntary commitment pursuant to New York Mental Hygiene Law § 9.37, which provides, in pertinent part:

> The director of a hospital, upon application by a director of
> community services or an examining physician duly
> designated by him or her, may receive and care for in such hospital
> as a patient any person who, in the opinion of the director of
> community services or the director's designee, has a mental illness for which
> immediate inpatient care and treatment in a

hospital is appropriate and which is likely to result in serious
harm to himself or herself or others.

The need for immediate hospitalization shall be confirmed by
a staff physician of the hospital prior to admission. Within
seventy-two hours, excluding Sunday and holidays, after such
admission, if such patient is to be retained for care and
treatment beyond such time and he or she does not agree to
remain in such hospital as a voluntary patient, the certificate of
another examining physician who is a member of the
psychiatric staff of the hospital that the patient is in need of
involuntary care and treatment shall be filed with the hospital.
From the time of his or her admission under this section the
retention of such patient for care and treatment shall be subject
to the provisions for notice, hearing, review, and judicial
approval of continued retention or transfer and continued
retention provided by this article for the admission and
retention of involuntary patients, provided that, for the
purposes of such provisions, the date of admission of the
patient shall be deemed to be the date when the patient was
first received in the hospital under this section.

(Emphasis Added).

As in Section 9.27 and Section 9.39, the use of the word "may" in the confinement

provisions of Section 9. 37 require an act of professional medical judgment. Examining

comparable language in Section 9.27, Judge Sweet's District Court opinion in Rosenberg

concluded: "The use of the word 'may' is convincing of the lack of encouragement or exercise of

coercive power by the state, factors that must exist under the state compulsion test. Even though

the MHL provides the legal framework under which physicians may involuntarily commit a

patient by creating procedures and standards for commitment, as Doe points out, it leaves the

decision to commit completely to the physician's discretion." 996 F. Supp. at 349-50 (citations

omitted).

Judge Sweet further determined:

Compliance with the procedures of the MHL, a statute that neither forces nor
encourages involuntary commitments, does not convert private action into state

14

action. New York's involuntary commitment scheme puts in place due process
safeguards for the protection of the person confronted with involuntary
confinement — hence, the requirement of evaluations by more than one physician
and the reminder to physicians that they consider alternate routes of treatment.
The actual decision of whether commitment is warranted, however, is left entirely
to the sound medical judgment of physicians.

Id. at 352.

Following Rosenberg and more recently Hogan and McGugan, in numerous § 1983 cases

involving private hospitals and health care professionals, District courts in this Circuit have

found that none of the three tests for state action – "state compulsion," "public function," and

"close nexus"— were satisfied. See e.g., Antwi v. Montefiore Med. Ctr., No. 14 CIV. 840 (ER),

2014 WL 6481996, at *6 (S.D.N.Y. Nov. 18, 2014); Middleton v. United States, No. 10-CV-

6057 (JFB)(ETB), 2012 WL 394559, at *5 (E.D.N.Y. Feb. 7, 2012); Britt v. Buffalo Mun. Hous.

Auth., 827 F. Supp. 2d 198, 206 (W.D.N.Y. 2011); Amofa v. Bronx–Lebanon Hosp. Center, No.

05 Civ. 9230 (SHS), 2006 WL 3316278, at *4 (S.D.N.Y. Nov. 13, 2006); Turturro v. Continental

Airlines, 334 F. Supp. 2d 383, 395–97 (S.D.N.Y. 2004); Doe v. Harrison, 254 F. Supp. 2d 338,

342–45 (S.D.N.Y. 2003).

Undeterred, the Plaintiff relies on Tewksbury v. Dowling, 169 F. Supp. 2d 103 (E.D.N.Y.

2001), another case in which the plaintiff was represented by Attorney Brooks of the Mental

Disability Law Clinic of the Jacob D. Fuchsberg Law Center, Touro College. There, under

similar circumstances, the court denied a motion for summary judgment dismissing Section 1983

claims against private physicians. The court specifically noted: "[I]f the decision to commit

Tewksbury was based purely on their own independent medical judgment, [the] Defendants

would be correct that they are not state actors." Id. at 109. However, the court found state action

because (1) the private physician had never examined plaintiff and (2) committed her solely on

the basis of an examination by the state physician and information he obtained from a social

worker at the state hospital, Stony Brook. See Harrison, 2006 WL 2109433, at *7 n. 4 (noting that state action could be found if the State was involved in making the medical decisions to involuntarily confine and treat Doe.)

In the Court's view, this case is similar to Tewksbury. According to the third amended complaint, the factual allegations of which the Court must take as true on this motion to dismiss, Drs. Ihenacho and Khan relied upon the assessment of Dr. Garro, a state actor, without conducting an independent medical examination. In this way, the Plaintiff characterizes the decision by Drs. Ihenacho and Khan to involuntarily commit him as a *fait accompli*.

After Tewksbury, a number of district courts have reached different results on what they perceived to be distinguishing facts. In Grogan v. Blooming Grove Volunteer Ambulance Corp., 917 F. Supp. 2d 283 (S.D.N.Y. 2013) aff'd sub nom. Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259 (2d Cir. 2014), the plaintiff brought a civil rights suit pursuant to 42 U.S.C. § 1983 against the Blooming Grove Volunteer Ambulance Corps ("BGVAC") and several of its directors, alleging that various disciplinary charges levied against her by BGVAC, and her resulting suspension as an officer of BGVAC without a hearing, violated her rights under the First and Fourteenth Amendments of the United States Constitution.

At the summary judgment stage, the District Court dismissed the Section 1983 claims, distinguishing Tewksbury on the basis that "[the] plaintiff in Tewksbury offered evidence that the private physicians who agreed to admit her to a private hospital had worked closely with state doctors and staff in doing so" whereas the plaintiff in Grogan "provided no such evidence of joint action between BGVAC and the state." 917 F. Supp. 2d at 289; see also Goonewardena v. N. Shore Long Island Jewish Health Sys., No. 11 CV 2456 (MKB)(LB), 2012 WL 7802351, at *8 n. 10 (E.D.N.Y. Nov. 5, 2012)(recommending dismissal of First Amendment Retaliation

claims against private physician where "[the] Plaintiff allege[d] no such state participation or involvement."), report and recommendation adopted, No. 11-CV-2456 (MKB), 2013 WL 1211496 (E.D.N.Y. Mar. 25, 2013) aff'd, No. 13-1578-CV, 2015 WL 1035846 (2d Cir. Mar. 11, 2015); Koulkina v. City of New York, 559 F. Supp. 2d 300, 321 (S.D.N.Y. 2008)(dismissing Section 1983 claims against private physicians where "Plaintiffs d[id] not allege that Dr. Kelly's diagnosis and treatment of Koulkina's left knee was in any way motivated or influenced by state law or state agents.")

However, the extent of the "joint action" by the private and state physicians in Tewksbury was, at least as described in the opinion, as follows:

> although Defendants are private physicians employed by a private hospital, they jointly participated with state officials. Here, Dr. Preval, undisputably a state actor, concluded that Tewksbury required hospitalization. A Stony Brook employee then telephoned Defendant Dowling who accepted Tewksbury for hospitalization at St. John's Hospital. Tewksbury was then transferred to St. John's and admitted without any further examination. Defendant Dowling did not meet Tewksbury until the following day. Defendant Aronson did not meet with Tewksbury until two days later, when he authorized her continued confinement. Further, Defendant Dowling admits in his deposition that when he did perform his psychiatric evaluation on the following day, he relied on information he obtained from a social worker at Stony Brook.

169 F. Supp. 2d at 110. The facts as alleged here are not materially distinguishable. In any event, the Court notes that the Section 1983 claims in Grogan were dismissed at the summary judgment stage, though concededly the Section 1983 claims in Goonewardena and Koulkina were dismissed at the motion to dismiss stage.

The Court recognizes that mere "[c]ommunications," even regular ones, "between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." Fisk v. Letterman, 401 F. Supp. 2d 362,

377 (S.D.N.Y. 2005); see also Morpurgo v. Inc. Vill. of Sag Harbor, 697 F. Supp. 2d 309, 338 (E.D.N.Y. 2010)(same).

In this regard, in analyzing a "state actor" issue in a different context, another district court found that it could "not f[ind] cases holding that a private actor who follows a mere suggestion or recommendation of a state actor acts under 'color of law.'" Missere v. Gross, 826 F. Supp. 2d 542, 569 (S.D.N.Y. 2011). A plaintiff may establish a "close nexus between the State and the challenged action" when, among other things, it is shown that the State "has provided such significant encouragement, either overt or covert, that the choice *must in law be deemed to be that of the State*." United States v. Stein, 541 F.3d 130, 146–47 (2d Cir. 2008) (emphasis added)(internal quotation marks omitted). "The 'significant encouragement' in these cases appears to amount to an exercise of state coercion, if not in form than in effect." Missere, 826 F. Supp. 2d at 569; see Stein, 541 F.3d at 147–48 (holding that a private entity's adoption of a policy to withhold attorneys' fees from employees accused of misconduct was effectively forced by Justice Department's prosecution guidelines and, thus, constituted state action under a "joint action" and "close nexus" theory). That is not surprising, as the purpose of the "close nexus" requirement (and, indeed, the state action requirement itself) "is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982).

Here, however, the Court need not decide whether a private actor's decision to follow the recommendation of a state actor, without an agreement between them, can be "attributable to the State." Stein, 541 F.3d at 146. This is in part because, as in Tewksbury, Drs. Inhenacho and Khan could not have committed the Plaintiff without the assistance of Dr. Garro, who is

unquestionably a state actor.  <u>Tewksbury</u> also involved an involuntary commitment pursuant to Section 9.37 of the MHL.  "Under this section of the MHL, the Director of Community Services must first certify that the patient requires immediate hospitalization. Only upon the application of the Director of Community Services, could [Drs. Inhenacho and Khan], as private physicians working for a private hospital, hospitalize [the Plaintiff] pursuant to this section of the MHL." <u>Tewksbury</u>, 169 F. Supp. 2d at 110.

Similarly, in <u>Kudla v. Queens Hospital Center</u>, 94 CV 4426 (CBA)(E.D.N.Y. Mar. 31, 1998), the plaintiff was involuntarily committed pursuant to § 9.27 of the MHL.  District Judge Carol B. Amon determined that § 9.27 of the MHL required action by four different individuals and that in the case before her, two of the individuals were unquestionably state actors.  The private physician defendant "could not have involuntarily admitted plaintiff to [Mount Sinai Hospital] absent those certifications." <u>Id.</u> at 67.

To be sure, as in <u>McGugan</u> and <u>Rosenberg</u>, the Plaintiff does not allege that state actors requested, much less compelled Drs. Ihenacho and Khan to involuntarily hospitalize him. However, as the Second Circuit outlined in <u>Hogan</u>, "[t]he conduct of private actors can be attributed to the State for this purpose if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, <u>or</u> (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." 346 Fed. Appx. at 629 (emphasis added).

In sum, at this stage of the litigation in which the Court must draw all favorable inferences in favor of the Plaintiff, the Court finds that the Plaintiff has adequately pleaded Section 1983 claims against Drs. Ihenacho and Khan based on a "sufficiently close nexus" with undisputed state actors. <u>Cf.</u> <u>Algarin v. New York City Dep't of Corr.</u>, No. 06 CIV. 508 (JSR),

2006 WL 1379605, at *1 (S.D.N.Y. May 19, 2006)(mere allegation that the defendant acted "at the behest" of a state actor was "far too conclusory to survive a motion to dismiss"). Accordingly, the Court denies that part of the motion by Drs. Ihenacho and Khan to dismiss the Section 1983 claims against them.

Having concluded that the Plaintiff states Section 1983 claims against Drs. Ihenacho and Khan based on a "sufficiently close nexus" with state actors, the Court need not entertain the Plaintiff's sweeping request to reexamine the merits of the <u>Rosenberg</u> decision, which the Plaintiff concedes is binding on this Court, for the express purpose of persuading the Second Circuit to reconsider that decision *en banc*. In a declaration submitted pursuant to 28 U.S.C. § 1746, Attorney Brooks notes that <u>Rosenberg</u> relied in part on <u>Spencer v. Lee</u>, 864 F.2d 1376 (7th Cir. 1989)(*en banc*), a case he describes as "intellectually dishonest, if not disingenuous." (Doc No. 119, at ¶ 19.)

Aside from the fact that legal arguments are more appropriately reserved for memoranda of law, charged language of this type, even in reference to court decisions, is unhelpful to the Court in reaching a just result. <u>Nevada Rest. Servs., Inc. v. Clark Cnty.</u>, No. 2:11-CV-00795 (KJD), 2012 WL 4355549, at *5 n. 3 (D. Nev. Sept. 21, 2012)(cautioning counsel about overly dramatic language).

D. <u>The Alternative Request to Convert This Motion Into A Motion for Summary Judgment</u>

As noted above, Drs. Ihenacho and Khan request, in the alternative, that this Court convert this motion to one for summary judgment pursuant to Fed. R. Civ. 56. In support of this proposed conversion, Drs. Ihenacho and Khan each submit affidavits. Dr. Ihenacho avers, among other things, that he "performed a lengthy psychiatric evaluation of [the Plaintiff]" and that he ultimately concluded, in his "independent professional medical opinion that [the Plaintiff]

needed to be involuntarily admitted to Brunswick Hospital, and [he] exercised [his] medical judgment in so deciding and confirming the need of [the Plaintiff] to be admitted." (Doc No. 111, Exh. D.)  Relatedly, Dr. Khan avers, among other things, that he "personally performed a psychiatric evaluation of [the Plaintiff]"; previously certified that he did so; and ultimately concluded in "independent professional medical opinion that [the Plaintiff] needed to be involuntarily admitted to Brunswick Hospital, and [he] exercised [his] medical judgment in so deciding and confirming the need of [the Plaintiff] to be admitted." (Doc No. 111, Exh. E.)

The Plaintiff opposes the alternative request by Drs. Ihenacho and Khan to convert the present motion to one for summary judgment.  However, presumably out of reasonable caution, the Plaintiff submitted, among other documents, affidavits from the Plaintiff; the Plaintiff's mother, Kathleen Bryant; a police report; and certain of the Plaintiff's medical records from Stony Brook.  The Plaintiff also submitted a declaration from Dr. Roy Lubit, M.D., a Board Certified Psychiatrist who previously served as the Acting Medical Director of Danvers State Hospital and Cape and the Islands Mental Health Center, both located in Massachusetts.  Dr. Lubit has no personal connection to this action.  Dr. Lubit offers his opinion that absent extraordinary circumstances, a medically acceptably psychiatric evaluation requires a personal interview of the patient by that psychiatrist. (Doc No. 122.)

When presented with matters outside of the pleadings in connection with a motion to dismiss, a district court has two options: "exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS)(ARL), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014)(citation and quotations mark omitted).  "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond

the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." <u>Carione v. United States</u>, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005).

Here, the Court, in its discretion, declines to convert the present motion to one for summary judgment. Although the Plaintiff was put on notice of this request, and indeed submitted significant documentary evidence in opposition, the Court is of the view that it is not yet in the best position to address whether material issues of fact exist with regard to these claims.

Pursuant to an order of United States Magistrate Judge Gary R. Brown entered March 9, 2015 extending the discovery period in this case, fact discovery is set to be complete by June 10, 2015 and expert discovery by July 20, 2015. Thus, there may be additional discovery material that may shed light on the viability of the Section 1983 claims against Drs. Ihenacho and Khan.

Further, the Court prefers to resolve motions for summary judgment with the benefit of Rule 56.1 statements submitted in accordance with Local Civil Rule 56.1 and the Court's Individual Rules. For these reasons, the Court denies the alternative request by Drs. Ihenacho and Khan to convert this motion into one for summary judgment.

E. <u>Supplemental Jurisdiction</u>

Drs. Ihenacho and Khan argue that, in the event the Court dismisses the federal causes of action against them, it decline to exercise supplemental jurisdiction over the state law claims against them. However, "[the] argument that the Court should not exercise supplemental jurisdiction over the claims [against Drs. Ihenacho and Khan] is moot in light of the fact that [those] federal claims survive." <u>Guan N. v. NYC Dep't of Educ.</u>, No. 11 CIV. 4299 (AJN), 2014 WL 1275487, at *27 (S.D.N.Y. Mar. 24, 2014).

Further, even if the Court had dismissed the federal claims against Drs. Ihenacho and Khan, the Second Circuit has made clear that a district court may not decline to exercise jurisdiction over state law claims where federal claims remain against other defendants and the state law claims "form part of the same case or controversy." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002)(internal quotation marks omitted). The Second Circuit has instructed that, "[i]n determining whether two disputes arise form a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006)(citing Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000)(internal quotations omitted).

In a Memorandum of Decision and Order entered on June 3, 2014, the Court denied Brunswick's motion to dismiss the pendent state law claims against it, reasoning that those claims were so "closely related" to the pending federal claims against the other Defendants – including, the Section 1983 Fourth Amendment claim against Steele – that they formed part of the same case or controversy. Bryant v. Steele, 25 F. Supp. 3d 233, 245 (E.D.N.Y. 2014). For substantially the same reasons, the Court concludes that the pendent state law claims against Drs. Ihenacho and Khan form part of the same case or controversy as the pending federal claims against the other Defendants. Therefore, even if there were no pending federal claims against Drs. Ihenacho and Khan, the Court would nevertheless deny that part of their motion to dismiss the pendent state law claims against them on this basis.

### III.     CONCLUSION

Based on the foregoing reasons, the motion to dismiss filed by Drs. Ihenacho and Khan is

denied in all respects.

**SO ORDERED.**

Dated: Central Islip, New York
March 21, 2015

____*Arthur D. Spatt*_____
   ARTHUR D. SPATT
  United States District Judge